IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:07CV114-03-MU

| | |
|---|---|
| JAMES BENJAMIN BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **O R D E R** |
| ) | |
| SAM DOTSON et. al., ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** comes before the Court on initial review of Plaintiff's Complaint under 42 U.S.C. § 1983, filed March 28, 2007 (Document No. 1) and Plaintiff's Motion For Appointment of Counsel (Document No. 3). For the reasons stated herein Plaintiff's Complaint is dismissed for failure to state a claim for relief and his motion for counsel is dismissed as moot.

Plaintiff alleges in his Complaint against Sam Dotson, Unit Manager at Marion Correctional Institution; Chris Surratt, Sergeant at Marion Correctional; James Johnson, Disciplinary Hearing Officer at Marion; Curtis Sturgill, Assistant Unit Manager at Marion; Sid Harkleroad, Superintendent of Marion Correctional Institution, and Boyd Bennett, Director of Prisons, that his due process rights were violated by Defendants because the evidence and witnesses that he requested was not provided to him in his defense at his disciplinary hearing; that Defendants lacked impartiality during the hearing; that he received an inadequate statement regarding the disposition of his hearing and that documents improperly taken from his cell allegedly for the investigation were not returned to him.

**I. FACTUAL BACKGROUND**

1

Plaintiff's Complaint and supporting documents establish that between May 3, 2006 and May 6, 2006 Plaintiff was informed by Defendant Surratt that he was facing disciplinary charges due to an inappropriate letter he wrote to a Anita Sigmon, a dietitian at Marion Correctional Institution which contained disrespectful, profane language and bodily fluid. (Complaint at 3.)[1] Plaintiff requested that Defendant Surratt perform a DNA test to compare his bodily fluid to that found in the letter. Plaintiff was informed that no DNA test would be performed and that Defendant Dotson, the investigatory officer, already compared the letter to a sample of Plaintiff's handwriting and concluded that Plaintiff wrote the letter (Complaint at 5.) On May 8, 2006, Plaintiff asked Defendant Sturgill, Assistant Unit Manager, to see the letter he allegedly wrote to Ms. Sigmon. Plaintiff was told that because the letter contained bodily fluid, it was in the biohazard evidence room and as such, Mr. Sturgill was not going to "mess with it." (Complaint at 6.) On May 10, 2006 Plaintiff went to his disciplinary hearing in front of Disciplinary Hearing Officer (DHO) Johnson. Defendant Johnson "read charges and explained reduce sentences, read all statements and asks what Plaintiff plea." (Complaint at 7.) Plaintiff plead not guilty and explained his side of the story. Plaintiff asked to see the letter he was accused of writing. DHO Johnson stated that a handwriting comparison had already been made and that he did not need to retrieve the letter in order to make a decision. (Complaint at 7.) DHO Johnson informed Plaintiff that he was ordering a re-investigation due to the fact that a witness did not sign his statement form. (Complaint at 8.) On May 16, 2006, pursuant to the re-investigation, Plaintiff was given a second chance to make a written statement. (Complaint at 9.) On May 22, 2006, in speaking with Defendant Dotson, Plaintiff learned that Defendant Dotson and another officer went into Plaintiff's cell and took some papers so that they could compare Plaintiff's

---

[1] Ms. Sigmon received the letter on April 4, 2006.

handwriting to the handwriting in the letter written to Ms. Sigmon. (Complaint at 10.)

On May 24, 2006, Plaintiff had his second disciplinary hearing before DHO Johnson. DHO Johnson read all statements and the charges. DHO Johnson informed Plaintiff that he could not review the letter send to Ms.Sigmon because the facility threw the letter away due to it being "biohazard to the facility." (Complaint at 16.) Plaintiff again plead not guilty and DHO Johnson found Plaintiff guilty and asked Plaintiff to sign "certain papers." (Complaint at 19.) The papers Plaintiff signed was a written disposition finding Plaintiff guilty of all charges and sentencing him to 60 days disciplinary confinement and 6 months of lost privileges.[2]

Plaintiff filed an appeal to Director of Prisons, Boyd Bennett. Mr. Bennett denied Plaintiff's appeal. Plaintiff also alleges that Superintendent Defendant Harkelroad violated prison policy and due process by not producing the "biohazardous" letter or at least making a copy of such letter and instead throwing the letter away and by not appointing a staff member to gather and present evidence for Plaintiff. Plaintiff also contends that his trust account should not have been debited the administrative fee because his hearing was in violation of due process.[3]

## II ANALYSIS

The Fourteenth Amendment provides that a person cannot be deprived of liberty or property

---

[2] Plaintiff takes issue that DHO Johnson did not read the written disposition to Plaintiff. The Court is not concerned that DHO Johnson did not read the written disposition to the Plaintiff. There is no evidence that Plaintiff was unable to read, therefore, due process requirements do not require that DHO Johnson read the written disposition to Plaintiff.

[3] Plaintiff contends that he should not have had to pay the administrative fee because his hearing was so lacking in due process. Because this Court has concluded that Plaintiff has not been deprived of his due process rights in connection with his disciplinary hearing, the Court also concludes that Plaintiff was not inappropriately charged the administrative fee.

without due process of law. However, in the context of prison disciplinary hearings, a prisoner must establish the existence of a protected liberty interest. The Supreme Court in <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974) held that when a liberty interest is at issue, certain procedural safeguards must be followed. The Supreme Court has gone on to state however, that not all punishment that a prisoner may receive is subject to the procedural safeguards of <u>Wolff</u>. Instead, a prisoner must establish that his punishment is "the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." <u>Sandin v. Conner</u>, 515 U.S. 472 (1995). The Court admitted that "prisoners do not shed all constitutional rights at the prison gate," <u>Wolff</u>, 418 U.S. at 555, but stated that "'lawful incarceration brings about the necessary withdrawal or limitations of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" <u>Jones</u>, 433 U.S. at 125, quoting <u>Price v. Johnston</u>, 334 U.S. 266 (1948). The Court concluded that "[d]iscipline by prison officials in response to wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." <u>Sandin v. Conner</u>, 515 U.S. 472, 485 (1995) (holding that segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest). The Court has also stated that a decision by a disciplinary board to revoke good-time credits passes scrutiny under the Due Process Claus if there is some evidence in the record to support the conclusions. <u>Superintendent, Mass. Correctional Inst. v. Hill</u>, 472 U.S. 445, 454 (1985). "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact. Revocation of good time credits is not comparable to a criminal conviction, and neither the amount of evidence to support such a conviction, nor any other standard greater than some evidence applies in this context." <u>Id</u>. at 456 (internal citations omitted). Therefore, federal Courts will not

review the entire record, weigh evidence or assess witness credibility. Id. at 455-56. A disciplinary board's findings will be disturbed only when unsupported by any evidence or wholly arbitrary and capricious. Id. at 457; see also Baker v. Lyles, 904 F.2d 925, 933 (4th Cir. 1990) (record of prison disciplinary hearing need not establish reliability of confidential informant to meet "some evidence" standard.)

Plaintiff's main argument is that he was deprived due process at his disciplinary hearing because the letter at issue was thrown away and no copy was made that could be viewed at the hearing. Plaintiff did request that he be permitted to view the letter but first was told it was in the biohazardous evidence room and later told it was discarded because it contained bodily fluid. Assuming for the moment that Plaintiff has established that a liberty interest of the type discussed in Wolff is at stake, Plaintiff has received the due process to which he is entitled. Plaintiff concedes that he was served with a notice of the charge against him, was given an opportunity to make a two statements on his behalf and to request evidence, received an initial hearing on the charge and received a second hearing after a re-investigation was ordered. The Court finds, as outlined in Superintendent , Mass. Correctional Institution v. Hill, that there was "some evidence" to support the decisions of the disciplinary officer in that the investigating officer compared the letter to a handwriting sample obtained from Plaintiff's cell and determined the handwriting matched.[4]

---

[4] Plaintiff seems especially concerned that the investigatory officer went into his cell when he was not there to retrieve a handwriting sample. While Plaintiff does not even frame this argument as a Fourth Amendment claim, the Court feels compelled to point out that Prisoners have no expectation of privacy in their cells or in their possessions, therefore the Fourth Amendment is not applicable to searches of prison cells. Hudson v. Palmer, 468 U.S. 517, 525-26 (1984). Furthermore, the grievance responses attached to Plaintiff's Complaint, seem to indicate that no property was actually taken from Plaintiff, but that a handwriting comparison was made without physically removing any documents from Plaintiff's cell.

Plaintiff is not entitled to demand that DNA tests be performed on the fluid from the letter against a sample of his DNA. Moreover, Plaintiff was given the benefit of a second hearing after a re-investigation. While it might have been better for a copy of the letter to be included in the record, given that it was contaminated with bodily fluid, this Court can appreciate why a determination was made to dispose of the letter. Moreover, Wolff does not require that the accused be permitted to demand a specific type of evidence or that certain tests be performed. Instead, Wolff, allows for an inmate to present evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals. Id. at 566. Here, the letter was discarded due to the fact that it contained bodily fluids.

After careful review of the Plaintiff's Complaint and the supporting documents, the undersigned finds that there is some evidence to support the hearing officer's decision of Plaintiff's guilt and as such Plaintiff received the due process to which he was entitled. Furthermore, Defendant's disposal of the letter containing bodily fluids does not violate the safeguards outlined in Wolff. Plaintiff received the process to which he was due and the alleged violations contained in Plaintiff's Complaint do not violate the safeguards as outlined in Wolff. Plaintiff's Complaint shall be dismissed for failure to state a claim for relief. See 28 U.S.C. §§ 1915(e)(2)(B)(ii); 1915A(b)(1).

**ORDER**

**NOW, THEREFORE, IT IS HEREBY ORDERED that:**

1) Plaintiff's Complaint (Document No. 1) is dismissed for failure to state a claim for relief;

2) Plaintiff's Motion for Appointment of Counsel (Document No. 3) is dismissed as moot.

**SO ORDERED**.

Signed: April 2, 2007

Graham C. Mullen
United States District Judge